IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIM MCDANIEL,<br><br>        Plaintiff,<br>   v.<br><br>UNITED STATES BAKERY, d/b/a FRANZ BAKERY,<br><br>        Defendant. | Case No.: 3:24-cv-01731-AN<br><br>OPINION AND ORDER |

        On September 13, 2024, plaintiff Tim McDaniel filed this action in Multnomah County Circuit Court against defendant United States Bakery d/b/a Franz Bakery, alleging claims for workers' compensation retaliation under Oregon Revised Statutes ("ORS") § 659A.040,[1] whistleblower retaliation in violation of ORS § 659A.199 (together, the "retaliation claims"), and failure to accommodate an actual or perceived disability in violation of ORS § 659A.112 (the "failure to accommodate claim"). On October 15, 2024, defendant removed the case to federal court. On November 12, 2024, plaintiff moved to remand the case back to state court. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated herein, plaintiff's motion is GRANTED.

## LEGAL STANDARD

**A.    Remand**

        Removal is proper where the federal court would have had subject matter jurisdiction over the case if the plaintiff had originally filed it in federal court. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citing 28 U.S.C. § 1441(a)). One basis of original subject matter jurisdiction, the only basis relevant here, is federal question jurisdiction under 28 U.S.C. § 1331, which provides federal district courts jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."

---

[1] Plaintiff frames his workers' compensation retaliation claim as being alleged under "ORS § 659A.040 *et seq.*," however, the body of the complaint references only ORS § 659A.040, and the sections immediately following ORS § 659A.040 do not appear to be relevant to plaintiff's claims.

A court must remand a removed action back to state court if it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

Courts use the "'well-pleaded complaint rule'" to determine whether an action is removable based on a federal question. *Toumaijan v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)), *abrogated on other grounds by Aetna Health Inc.*, 542 U.S. at 210. However, "the complete preemption doctrine is 'an exception to the well-pleaded complaint rule.'" *Hawaii ex rel. Louis v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1035 (9th Cir. 2014) (internal ellipses omitted) (quoting *Aetna Health Inc.*, 542 U.S. at 207). Under the complete preemption doctrine, "Congress may so completely preempt a particular area [of law]" that any claim—even a state law claim—in that area "is necessarily federal in character." *Metro. Life Ins. Co.*, 481 U.S. at 63-64. "In such a case, . . . federal subject matter jurisdiction exists[,] and removal is appropriate." *Toumaijan*, 135 F.3d at 653 (citing *Metro. Life Ins. Co.*, 481 U.S. at 63-64). "The complete preemption exception to the well-pleaded complaint rule is applied primarily under [section] 301 of the [Labor Management Relations Act ("LMRA")]." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005).

Ultimately, "[a] defendant seeking removal has the burden to establish that removal is proper[,] and any doubt is resolved against removability." *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). "[R]emoval statutes are strictly construed against removal." *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus*, 980 F.2d at 566). Courts generally "only look to the plaintiff's complaint to determine federal question jurisdiction." *Hawaii ex rel. Louie*, 761 F.3d at 1035 (citation omitted). "However, when a defendant asserts that a claim is completely preempted, examination of extra-pleading material[,]" including the notice of removal and collective bargaining agreements, "is permitted." *Id.* (citations omitted).

**B.     Preemption**

Although phrased as a jurisdictional grant, Section 301 of the LMRA has been held to completely preempt state law claims enforcing or substantially dependent on a collective bargaining

agreement. *See Kobold*, 832 F.3d at 1032; *Valles*, 410 F.3d at 1075. Section 301 provides, in relevant part:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

29 U.S.C. § 185(a). Although phrased as "complete preemption," it is not the case that "'every dispute concerning employment, or tangentially involving a provision of a [CBA], is pre-empted by [Section] 301.'" *Kobold*, 832 F.3d at 1031 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). In the Ninth Circuit, courts engage in a two-step analysis when analyzing whether Section 301 preempts a state law claim (the "*Burnside* test"). *Id.* at 1032 (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

Under the first step of the *Burnside* test, courts ask "'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.'" *Id.* (quoting *Burnside*, 491 F.3d at 1059). To analyze this prong, courts focus "on 'the *legal* character of a claim, as independent of rights under the [CBA,] and not whether a grievance arising from precisely the same set of facts could be [or was] pursued.'" *Id.* at 1033 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). "Only if the claim is 'founded directly on rights created by [a] [CBA]' does [Section] 301 preempt it." *Id.* at 1032 (first alteration in original) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

If a court determines that the right in question "'exists independently of the CBA,' it moves to the second step, asking whether the right 'is nevertheless substantially dependent on analysis of [the CBA].'" *Id.* (quoting *Burnside*, 491 F.3d at 1059). The second step "turns on 'whether the claim can be resolved by look[ing] to versus interpreting the CBA.'" *Id.* at 1033 (alteration in original) (quoting *Burnside*, 491 F.3d at 1059). Even if a union grievance and a state law claim are based on the same set of facts, so "long as the state-law claim can be resolved without interpreting the [CBA] itself, the claim is independent[.]" *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 409-10 (1988). If the court must interpret the CBA, however, then the claim is preempted. *Kobold*, 832 F.3d at 1033 (citing *Burnside*, 491 F.3d at 1060). In this context, "the term 'interpret' 'is defined narrowly—it means something more than

'consider,' 'refer to,' or 'apply.'" *Id.* (quoting *Balcorta*, 208 F.3d at 1108). A defendant cannot mandate preemption by "'injecting a federal question,'" *id.* (quoting *Caterpillar*, 482 U.S. at 399), or by "'refer[ring] to the CBA in mounting a defense'" against a state law claim, *id.* (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc)). Ultimately, the Ninth Circuit has noted that "'the line between reference to and interpretation of [a CBA] may be somewhat hazy[.]'" *Balcorta*, 208 F.3d at 1108 (quoting *Ramirez v. Fox Television. Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993)).

## BACKGROUND

### A.     Factual Background

Plaintiff worked for defendant as a transport driver from February 28, 2022, to September 19, 2023. Compl., ECF [1], ¶¶ 7, 21. At all material times, the Oregon Teamsters was plaintiff's exclusive representative and party to a collective bargaining agreement (the "CBA") with defendant. *See* Notice of Removal, ECF [1], ¶¶ 12-13 & Ex. E ("CBA"). On April 30, 2022, plaintiff suffered a complete tear to his rotator cuff while working. Compl. ¶ 8. He timely filed a worker's compensation claim regarding the injury. *Id.* ¶ 9. On October 19, 2022, plaintiff received medical care for the injury. *Id.* ¶ 10. Thereafter, defendant failed to timely pay the costs of plaintiff's medical care. *Id.* As a result, defendant filed a complaint with the State of Oregon Workers' Compensation Division (the "Division"). *Id.* On March 27, 2023, the Division "approved an agreement that [d]efendant pay the medical expenses." *Id.*

In May of 2023, plaintiff was cleared to return to work "with limitations on lifting weight above the right side of his head" due to his injury. *Id.* ¶ 11. As an accommodation for the injury, plaintiff requested that defendant consider him for open positions for store clerk or merchandiser. *Id.* Defendant declined to consider him for those positions "due to his injury." *Id.* Plaintiff then asked if he could fulfill either of the open positions "with an accommodation, such as use of a step ladder." *Id.* ¶ 12. Defendant did not respond to this request. *Id.* Plaintiff then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against defendant for refusing to hire him to an open position with accommodations. *Id.* ¶ 13.

In early August of 2023, plaintiff returned to his position as transport driver, without

4

limitations, and was informed that he would be required to restart his probationary period. *Id.* ¶ 15. Plaintiff saw this as a violation of the CBA and therefore filed a grievance. *Id.* ¶ 16. Plaintiff also filed complaints with the EEOC and the Oregon Bureau of Labor and Industry ("BOLI"), alleging violations of state and federal law. *Id.* ¶ 17. Plaintiff's BOLI filing set forth a variety of claims, including two of the same claims he brings in this case: retaliation in violation of ORS § 659A.040 and failure to accommodate under ORS § 659A.112. *See* Def. Resp. Opp'n Pl. Mot. for Remand ("Def. Resp."), ECF [5], ¶ 9 & Ex. 1 ("BOLI Decision"). Plaintiff alleges that thereafter, defendant singled him out for unnecessary driving tests and falsely reported that he failed. Compl. ¶ 19.

On September 2, 2023, defendant dropped plaintiff's position on the job board, which "amounted to a demotion and pay cut." *Id.* ¶ 20. Plaintiff alleges that this was against defendant's general policy of seniority determining an employee's position on the job board. *Id.*

On September 14, 2023, defendant suspended plaintiff's employment. *Id.* ¶ 21. On September 19, 2023, defendant terminated plaintiff's employment. *Id.*

On January 19, 2024, the Joint Conference Board ("JCB"), the arbitral board designated to adjudicate grievances under the CBA, issued a decision in defendant's favor regarding plaintiff's union grievance. Notice of Removal ¶ 18 & Ex. G ("JCB Decision"). On February 13, 2024, BOLI dismissed plaintiff's BOLI complaint "for lack of substantial evidence that [defendant] violated ORS [§§] 659A.040, 659A.043, 659A.046, or 659A.112." BOLI Decision 2 (referring to pagination of exhibit).

**B.      Procedural History**

On September 13, 2024, plaintiff initiated this action in Multnomah County Circuit Court. On October 15, 2024, defendant removed the case to federal court. On November 12, 2024, plaintiff moved to remand the case back to state court. Pl. Mot. for Remand ("Pl. Mot."), ECF [4].

## DISCUSSION

Plaintiff asserts three claims: the retaliation claims, under ORS §§ 659A.040 and 659A.199, and the failure to accommodate claim, under ORS § 659A.112. The Court addresses each in turn.

5

**A.     Prong One**

Each of plaintiff's claims pass the first prong of the *Burnside* test. Plaintiff contends, and defendant does not dispute, that each of the three claims "seek[] to defend rights bestowed upon [p]laintiff by Oregon law, not the CBA." Pl. Mot. 2. Specifically, plaintiff alleges violations of ORS §§ 659A.040, 659A.199, and 659A.112. *See* Compl. ¶¶ 23-34. Although plaintiff pursued a grievance on related facts, that does not change the "legal character" of his claims, which are predicated on rights enshrined in state law. *See Kobold*, 832 F.3d at 1032. Thus, the first *Burnside* prong is satisfied as to all of plaintiff's claims.

**B.     Prong Two**

  1.     *Workers' Compensation Retaliation*

Plaintiff's workers' compensation retaliation claim passes the second prong of the *Burnside* test. Particularly instructive is *Lingle*. In that case, the plaintiff filed suit in Illinois state court against her former employer for retaliatory discharge for filing a workers' compensation claim, a recognized tort in that state. *Lingle*, 486 U.S. at 402. The defendant removed the case to federal court, arguing that plaintiff's claim was preempted by Section 301. *Id.* The district court, and the Seventh Circuit on appeal, agreed that plaintiff's claim was preempted, reasoning that the claim was "inextricably intertwined" with the applicable CBA policy prohibiting wrongful discharge and was based on "the same analysis of facts" as the plaintiff's prior union grievance. *Id.* However, the Supreme Court disagreed. *Id.* at 407. The Supreme Court noted that the elements of the plaintiff's claim required that she:

> "set forth sufficient facts from which it can be inferred that (1) [she] was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge [her] was to deter [her] from exercising [her] rights under the [Illinois Workers' Compensation] Act or to interfere with [her] exercise of those rights."

*Id.* (citation omitted). The Supreme Court reasoned that because the elements of the claim and the defenses the defendant may raise were "purely factual," they would not require a court to interpret the CBA. *Id.*

Here, plaintiff's workers' compensation retaliation claim is brought under ORS § 659.040. Oregon Revised Statutes § 659.040 provides in full:

> "It is an unlawful employment practice for any person acting on behalf of an employer to discriminate against a worker with respect to hire or tenure or any term or condition of

6

>    employment because the worker has:
>    (1)   Applied for or inquired about benefits under ORS chapter 656;
>    (2)   Invoked or utilized the procedures provided for in ORS chapter 656; or
>    (3)   Given testimony under the provisions of ORS chapter 656."

To reach a decision on this claim, a reviewing court would need to determine whether (1) plaintiff utilized the workers' compensation system, and (2) if so, whether defendant terminated him because of it. Answering these questions does not require interpretation of the CBA. Thus, the second *Burnside* factor is satisfied, and plaintiff's workers' compensation retaliation claim is not preempted by Section 301.

Defendant's arguments to the contrary do not alter the Court's analysis. Defendant argues that to prove a workers' compensation retaliation claim, plaintiff must establish, in relevant part, that he "'was discriminated against in the tenure, terms or conditions of employment,'" and "'that [defendant] discriminated against [plaintiff] in the tenure or terms of employment because he [] invoked the workers' compensation.'" Def. Resp. 16 (quoting *Kirkwood v. W. Highway Oil Co.*, 204 Or. App. 287, 293, 129 P.3d 726 (2006)). Defendant points to plaintiff's allegations that defendant wrongfully restarted his probationary period and lowered him on the job board in violation of the CBA's policies regarding probationary periods and seniority and ultimately argues that "the [] CBA encompasses the tenure, terms, and conditions of [plaintiff's] employment[,]" including those governing probationary periods and seniority. *Id.* (citing Compl. ¶¶ 15-17, 20-23). These arguments are unavailing. The Court must focus "on the *legal* character of a claim, as independent of rights under the [CBA], and not whether a grievance arising from precisely the same set of facts could be pursued." *Kobold*, 832 F.3d at 1033 (emphasis in original) (citation omitted). Here, while it is true that plaintiff's factual allegations include some terms that are found in the CBA, such as "job board," "probation," etc., these terms are used to describe the facts of the case—not as the basis for plaintiff's workers' compensation retaliation claim. Indeed, plaintiff does not allege that defendant violated ORS § 659A.040 by wrongfully restarting plaintiff's probationary period or lowering him on the job board. Instead, plaintiff's workers' compensation retaliation claim centers on the question of "whether [d]efendant was motivated by retaliatory animus in terminating [his] employment." Pl. Mot. 2; *see* Compl. ¶¶ 24-25. As *Lingle* instructs, this is a purely factual inquiry that does not require interpretation of the CBA.

The Court is also unpersuaded by defendant's citation to *Dunlap v. Fred Meyer Stores, Incorporated*, No. 04-cv-950-BR, 2006 WL 2901841 (D. Or. Oct. 5, 2006).[2] The court in *Dunlap* explained that *Lingle* does not wholesale exclude workers' compensation retaliation claims from being preempted. *See id.* at *6-7. Each claim must be individually analyzed to determine whether it "turn[s] on the meaning of [a] provision of the [CBA]." *Id.* at *6 (alterations in original). In *Dunlap*, the plaintiff suffered a back injury while working in defendant's warehouse and filed for workers' compensation benefits. *Id.* at *1. The defendant eventually terminated the plaintiff's employment pursuant to a section within the applicable CBA. *Id.* The plaintiff sued, alleging that the defendant "terminated his employment and failed to rehire him in violation of [ORS] § 759A.040[.]" *Id.* at *2. The plaintiff did not dispute that the defendant terminated his employment based solely on the section of the CBA but asserted that the section in question "violate[d] [ORS] § 759A.040 on its face[.]" *Id.* The *Dunlap* court reasoned that because plaintiff "challenge[d] the legality of [the section] of the CBA, . . . the [c]ourt [could not] resolve [the plaintiff]'s claim without construing the CBA." *Id.* at *7.

Defendant asserts that this case is like *Dunlap* and the cases *Dunlap* cites to. *See* Def. Resp. 11. It argues that Section 18.2.2 of the CBA provides defendant "with the right to discharge employees at-will[,]" and that "[b]y asserting [that his] probationary status should not have been extended, [p]laintiff is asserting that he could only be discharged for cause under Section 17.1." *Id.* at 5-6 (citing CBA §§ 17.1, 18.2.2). Thus, defendant argues, "[p]laintiff's claims rest[] directly upon the language of the [] CBA." *Id.* at 11. The Court disagrees. Plaintiff's first claim does not assert that he could only be discharged for cause. Instead, it simply asserts that he should not be discharged for exercising his workers' compensation rights. Because (unlike the plaintiff in *Dunlap*) plaintiff does not "challenge[] the legality of . . . the CBA," his workers' compensation retaliation claim can be resolved without interpreting the CBA. *Dunlap*, 2006 WL 2901841, at *2.

---

[2] Defendant's citations to out-of-circuit cases that pre-date *Lingle* are even less persuasive. *See Lingle*, 486 U.S. at 402 n.1 (calling into question *Johnson v. Hussmann Corp.,* 805 F.2d 795 (8th Cir. 1986)); *Goetzke v. Ferro Corp.*, 280 F.3d 766, 773 (7th Cir. 2002) (expressly overruling *Vantine v. Elkhart Brass Mfg. Co.*, 762 F.2d 511, 517 (7th Cir. 1985)).

This conclusion is also supported by *Kobold*, in which the Ninth Circuit analyzed preemption as to three cases. *See* 832 F.3d at 1034-49. In explaining applicable law regarding preemption, the *Kobold* court instructed that a preemption analysis is generally based on a plaintiff's claim, not on a defendant's defense. *See id.* at 1033 (citing *Caterpillar, Inc.*, 482 U.S. at 399). Thus, "[i]f the *claim* is plainly based on state law, [Section] 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.'" *Id.* (first alteration and emphasis in original) (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc)). Here, defendant asserts that it did not terminate plaintiff for a discriminatory (or retaliatory) reason, but rather, for reasons permitted by the CBA. These assertions are raised in mounting a defense and do not mandate preemption where plaintiff's claim is plainly based on state law.

For all these reasons, plaintiff's workers' compensation retaliation claim is not preempted by Section 301.

    2.    *Whistleblower Retaliation*

Plaintiff's whistleblower retaliation claim also passes the second prong of the *Burnside* test. This claim is brought under ORS § 659.199, which provides in full:

> "It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

Plaintiff's allegations are consistent with the elements of a whistleblower retaliation claim under ORS § 659.199. *Compare* Compl. ¶¶ 28-29; *with Brunozzi v. Cable Comm'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) ("To establish a prima facie case of retaliation under ORS [§] 659A.199, the plaintiff must demonstrate that (1) he was engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision."), *and* Or. Uniform Civil Jury Instructions, 58A.01, Whistleblowing (2008-2024). To defend against a whistleblower retaliation claim, defendant may show that it terminated plaintiff for a reason other than his reports. *See, e.g.*, *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984) (citing

9

*Cohen v. Fred Meyer*, 686 F.2d 793, 796 (9th Cir. 1982)) These questions—*i.e.*, whether plaintiff, in good faith, reported what he believed to be evidence of misconduct, and whether defendant retaliated against plaintiff for that report or, instead, had a non-retaliatory reason for terminating plaintiff—are purely factual ones. Answering these questions does not require interpretation of the CBA. Thus, the second prong of the *Burnside* test is satisfied, and plaintiff's whistleblower retaliation claim is not preempted by Section 301.

Again, defendant's arguments to the contrary are unavailing. For example, defendant asserts that the Court must interpret several provisions of the CBA to determine whether there was a connection between the protected activity and plaintiff's termination. Def. Resp. 15. In support of this argument, defendant points to several of plaintiff's allegations, including that he should have been considered for non-bargaining positions of store clerk and merchandiser, that defendant's determination that plaintiff must re-start his probationary status was evidence of retaliation, and that plaintiff's lowering on the job board was in violation of the CBA's seniority provisions, as examples of why the CBA's provisions must be looked to when analyzing the whistleblower retaliation claim. *Id.* For many of the same reasons discussed above regarding plaintiff's worker's compensation retaliation claim, the Court disagrees. For one, there can be no doubt that termination is an adverse employment decision. *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986) ("In the typical termination case, the 'adverse employment decision' is the termination itself."). The CBA need not be interpreted to reach this conclusion. Second, plaintiff does not allege that the adverse employment decision at issue was any of the actions identified by the allegations pointed to by defendant (*i.e.*, defendant's lack of consideration of plaintiff for non-bargaining positions, determination regarding plaintiff's probationary status, or lowering of plaintiff's position on the job board). Plaintiff alleges that the adverse employment decision at issue was his termination. As reasoned above, this is a purely factual inquiry. Third, Defendant again mounts as a defense its argument that it did not terminate plaintiff for a retaliatory reason, but rather, for reasons permitted by the CBA, but these arguments are, for the reasons already described, insufficient to mandate preemption of plaintiff's state law claim. *See Kobold*, 832 F.3d at 1033 (quoting *Cramer*, 255 F.3d at 691) ("'[Section] 301 preemption is not

mandated simply because the defendant refers to the CBA in mounting a defense.'").

Defendant also asserts that plaintiff's whistleblower retaliation claim is foreclosed by the JCB Decision. *See* Def. Resp. 15. Defendant states that plaintiff alleges within the whistleblower retaliation cause of relief itself that the claim "is brought forth based upon [plaintiff's] grievance filed with the [u]nion[,]" and that grievance was already decided by the JCB. Def. Resp. 15. On this point, the parties both cite to *Allen v. Northwest Permanente*, a case reviewed by the Ninth Circuit in *Kobold*.

In *Allen*, the plaintiff brought claims against the defendant, her former employer. *Kobold*, 832 F.3d at 1047. The plaintiff had previously filed a grievance pursuant to the applicable CBA's mandatory grievance process. *Id.* at 1043. The grievance progressed through arbitration, and the arbitrator ultimately determined that plaintiff's claims arose from the CBA and awarded reinstatement but not backpay. *Id.* "Unhappy with the arbitration award, [the plaintiff] sued in state court, . . . alleging state law claims, including intentional interference with economic relations/contract; defamation; breach of contract; and breach of the duty of good faith." *Id.* at 1044. The defendant removed to federal court, and the plaintiff moved to remand to state court. *Id.* The defendant conceded that the plaintiff's defamation claim was not preempted but asserted that plaintiff's other claims were. *Id.* The district court agreed and denied the motion to remand, and thereafter, the plaintiff abandoned all her claims except her claim for defamation. *Id.* On appeal, the Ninth Circuit found that because the plaintiff's claim "progress[ed] through arbitration, the question whether that claim is based on a right conferred by the CBA must be considered in light of the arbitrator's decision." *Id.* at 1046. Put differently, where the arbitrator themselves "*decided* the question raised under the first *Burnside* [prong]—whether [the plaintiff]'s claims arise out of the [] CBA or, rather, 'exist independently' of it[,]" the court analyzing preemption cannot "overturn the arbitrator's interpretation of the contract." *Id.* at 1047.

Here, defendant asserts that because "the [JCB] was presented with the issue as to whether [d]efendant[] violated [Sections] 2.1 (non-discrimination) and 18.2.1 (probationary seniority)[,]" and because that issue was decided by the JCB, plaintiff cannot relitigate that issue and his claim is thus preempted. Def. Resp. 16. Plaintiff asserts that he "does not seek to disturb or re-litigate" the JCB's findings

11

and "argues that the fact of having made a complaint itself motivated [d]efendant's decision to terminate [plaintiff's] employment." Pl. Mot. 4.  To the latter point, plaintiff notes that "[a] whistleblower retaliation claim under ORS [§] 659A.199 need not show that a reported activity was unlawful; instead, a plaintiff must have 'had a *subjective*, good faith belief that [he] reported evidence of a violation of a law, rule, or regulation.'" *Id.* (quoting *Karthauser v. Colum. 9-1-1 Commc'ns Dist.*, 647 F. Supp. 3d 992, 1018 (D. Or. 2022) (emphasis in original)).  The Court agrees with plaintiff.  Plaintiff's claim is premised on the allegation that defendant's decision to terminate plaintiff's employment was motivated by retaliatory animus—not on defendant's alleged violations of Sections 2.1 and 18.2.1 of the CBA.  That the facts underlying the claim's history are the same as those underlying the grievance is not sufficient to mandate preemption.  *See Lingle*, 486 U.S. at 409-10.

For all these reasons, plaintiff's whistleblower retaliation claim is also not preempted by Section 301.

   3. *Failure to Accommodate Claim*

Finally, plaintiff's failure to accommodate claim also passes the second prong of the *Burnside* test.  This third claim is brought under ORS § 659.112 and is based on plaintiff's allegations that he "disclosed a disability . . . and requested accommodations including placement in open job positions for which he was qualified[,]" and that "[d]efendant unlawfully failed to accommodate [p]laintiff by refusing to engage in the interactive process to accommodate his disability, refusing to consider him for open positions for which he was qualified, and thereafter terminating his employment." Compl. ¶¶ 32-33.  To prevail on this claim, plaintiff must prove that "(1) [he] requested accommodation . . . and (2) [] defendant could have reasonably accommodated the plaintiff[] but did not."  Or. Uniform Civil Jury Instructions, 59.05, Disability Discrimination—"Failure to Accommodate" (Aug. 2019); *see Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 798-99 (9th Cir. 2017).  To determine whether an employee may be reasonably accommodated, employers are obligated to initiate and engage in an "interactive process," and a failure to do so may be treated as a failure to accommodate.  *Moore v. Portland Public Schools*, 328 Or. App. 391, 412-13, 537 P.3d 544 (2023) (citing Or. Admin. R. 839-006-0206(4), (6)).

Defendant does not argue that the first element requires interpretation of the CBA, as plaintiff need only show evidence that he requested an accommodation. Defendant instead contends that determining what accommodation would be reasonable requires interpretation of the CBA. The Court disagrees. As the Ninth Circuit has held in *Humble v. Boeing*, 305 F.3d 1004, 1010-11 (9th Cir. 2002), and *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526-27 (9th Cir. 1995), such a determination is made with reference to Oregon law, without requiring the reviewing court to interpret the terms of the CBA.

In *Jimeno*, the employer terminated plaintiff from his union-represented job as a mechanic after learning that he had been diagnosed with spondylolysis, a congenital or developmental defect of the spine, and degenerative disc disease. 66 F.3d at 1518-19. The plaintiff's union filed an internal grievance alleging that his termination violated the CBA but declined to arbitrate the grievance. *Id.* at 1519. The plaintiff ultimately filed suit in state court for workers' compensation retaliation and disability discrimination under state law. *Id.* The defendant removed the case to federal court, where the district court held a trial before deciding that the plaintiff's disability discrimination claim was preempted by Section 301. *Id.* The Ninth Circuit reversed, observing that "clear statutory and regulatory standards provide a means to determine 'reasonable accommodation' without reference to the CBA." *Id.* at 1527; *see Miller v. AT&T Network Sys.*, 850 F.2d 543, 549 (9th Cir.), *as am. on denial of reh'g en banc* (1988) ("Oregon has construed its discrimination statute so that it relies on standards of discriminatory firings that are independent of any standard of reasonable treatment set forth in the CBA."). Just like defendant here, the defendant in *Jimeno* argued that a court would need to interpret the CBA's seniority and transfer provisions to determine what accommodations were reasonable. *See Jimeno*, 66 F.3d at 1527. The court rejected that argument, emphasizing that transfer is just one of the reasonable accommodations that can be provided and that the defendant offered no evidence that it had explored any accommodations that would not have implicated the CBA. *Id.*

More recently, the Ninth Circuit applied *Jimeno* and again concluded that Section 301 does not preempt a reasonable accommodation claim asserted under Oregon law. *See Humble*, 305 F.3d at 1008-12. In *Humble*, the Ninth Circuit specifically considered, and rejected, the defendant's argument that the

13

CBA's "intricate scheme of seniority" would need to be "interpreted to determine for which jobs [the plaintiff] would have been eligible if her accommodation took the form of a transfer." *Id.* at 1010. The court emphasized that "a CBA provision does not trigger preemption when it is only *potentially* relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur." *Id.* Further, even if transfer is the only viable accommodation, the court held that "the mere need to refer to a CBA to determine the jobs for which a disabled employee might be eligible may not be sufficient to trigger [Section] 301 preemption." *Id.* Indeed, even "the possibility that[,] in the course of resolving the reasonable accommodation claim, an interpretive dispute might arise under [the CBA] over the jobs for which [the plaintiff] was eligible," is not sufficient to trigger Section 301 preemption because such an interpretation would be only "peripherally relevant" and "limited[.]" *Id.* at 1011.

Applying *Jimeno* and *Humble* to the facts of this case, plaintiff's claim for disability discrimination is not substantially dependent on interpretation of the Oregon Teamsters CBA. To decide whether defendant could have reasonably accommodated plaintiff's disability, a reviewing court would have to analyze whether defendant could have implemented "modifications or adjustments to an application process, work environment, or to the manner or circumstances under which a job is customarily performed that enable [plaintiff] to perform the essential functions of the job and enable [him] to enjoy equal benefits and privileges of employment as are enjoyed by similarly situated employees without a disability" without undue hardship to defendant's business. Or. Uniform Civil Jury Instructions, 59.0, Disability Discrimination—Reasonable Accommodation Defined (Aug. 2019). Oregon law establishes detailed standards for determining what constitutes a reasonable accommodation, wholly independent of any labor or employment contract. *See* ORS § 659A.112-121 (providing definitions and criteria for disability discrimination, qualifications, reasonable accommodation, and undue hardship); OAR § 839-006-0206 (same); *see also Miller*, 850 F.2d at 549 ("The question whether the employee can satisfactorily perform the job does not depend on interpretation of standards set out in the CBA governing job assignments and discharge. Rather, Oregon courts look to independent expert opinions of what skills a particular job requires without regard to minimum standards set out by the employer." (citing *Brown v. City of Portland*, 80 Or.

14

App. 464, 722 P.2d 1282, 1286 (1986)). As was the case in *Jimeno*, these "clear statutory and regulatory standards provide a means to determine 'reasonable accommodation' without reference to the CBA," and, therefore, weigh against preemption. 66 F.3d at 1527.

Defendant asserts that the CBA's seniority system requires preemption, but such an argument is largely foreclosed by *Humble*. It is true that an accommodation that requires violating the rules of a seniority system is ordinarily not reasonable. *See United States Airways, Inc. v. Barnett*, 535 U.S. 391, 405 (2002); *but see id.* at 405-06 ("[A] plaintiff . . . [may] show[] special circumstances that make an exception from the seniority system reasonable in the particular case."). But, as the court in *Humble* observed, transfer is but one possible accommodation. Here, where defendant is alleged to have not engaged in an interactive process at all (itself a violation of ORS § 659A.112), it cannot be heard to argue that there is only one possible accommodation that would have enabled plaintiff to perform his job functions. Given that a court may not need to reference the CBA's seniority and transfer provisions at all to resolve plaintiff's claim, his claim does not substantially depend on the CBA. *See Humble*, 305 F.3d at 1010 ("[T]he fact that a need to interpret the CBA is only hypothetical seriously undercuts a defendant's argument that the state law claim 'substantially depends' on the terms of the CBA."). Further, should a court need to reference the CBA to identify what positions plaintiff was qualified for, any such application of the CBA would be peripheral and limited. *See id.* at 1011; *see also Kobold*, 832 F.3d at 1033 ("[I]nterpret is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" (citation omitted)).

## CONCLUSION

For the reasons stated herein, plaintiff's Motion to Remand, ECF [4], is GRANTED.

IT IS SO ORDERED.

DATED this 29th day of September, 2025.

_____
Adrienne Nelson
United States District Judge